UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ] | |
| Plaintiff/Respondent | ] | |
| | ] | CV-12-006661-SVW |
| vs. | ] | CR-07-00708-SVW |
| | ] | Hon. Judge Wilson |
| ANDRANIK PETROSIAN, | ] | |
| Defendant/Petitioner | ] | |

## PETITIONER'S REPLY TO THE GOVERNMENT'S OPPOSITION BRIEF TO DEFENDANT'S MOTION FOR RELIEF PURSUANT TO 28 U.S.C.§2255

NOW COMES, the Petitioner, PETROSIAN ANDRANIK, Pro Se out of necessity, and files his reply to the Government's oppostion brief to his motion under 28 U.S.C. §2255.

1. INTRODUCTION :

The Petitioner will limit his arguments in this reply brief, only to address the Government's assertions and misrepresentations made in their brief, with refferences to the Petitioner's initial motion.

== PAGE 1 ==

A) PROCEDURAL HISTORY :

On APRIL 14, 2008, the Petitioner was convicted, after a jury trial, of one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. §371, and of one count of False Statements to the Government in violation of 18 U.S.C. 1001.

After the Court denied the Rule 29 and 33 motions, and sentencing position papers were filed, the Court sentenced the Petitioner to the 96 months imprisonment. Specifically, on the Judgement and Committment Order the Court stated that it imposed the **maximum** time allowed for Count I of 60 months, and to **maximum** time allowed for Count II namely 36 months. Then, the Court without any specifications or clarifications, he ordered the bpth sentences to run **consecutive** to a total term of 96 months.

A NOTICE OF APPEAL was taken on DECEMBER 13, 2010. After full briefing, the Court of Appeals AFFIRMED the District Court decisions. However, as the Petitioner has argued in his §2255 motion, the Appeal Attorney **did not argue in appeal the sentencing enhancements**, or the fact that the **Court imposed consecutive instead of concurrent** as per the U.S. SENTENCING GUIDELINES.

On AUGUST 2012, the Petitioner filed the pro se motion for relief pursuant to 28 U.S.C. §2255, on grounds of Ineffective Assistance of Counsel, and that the sentence exceed the maximum authorized range.

== PAGE 2 ==

After much unnecessary delay, the Government filed their response that frankly surprised the Petitioner in many respects as it will be explained below.

B) **ARGUMENTS IN REPLY** :

The Government choosed to respond, or to address only 3 issues, and the rest choosed to ignore. The matters are as follows :

1. ~~The Trial attorney MARK WERKSMAN was ineffective for failing to~~ request a mistrial;

2. The Appelate attorney, MYRA MOSSMAN, was ineffective for failing to raise sentencing issues in appeal;

3. The Sentencing Attorney THOMAS NISHI, was innefective for failing to argue the sentences to run concurrent instead of consecutive.

The Petitioner will respond/reply to each of the three categories identified above, and will include the rest of arguments that were also addressed by the Government incidental in those categories. The argument will be divided on three categories, namely : 1. TRIAL COUNSEL; 2. SENTENCING COUNSEL; 3. APPEALTE COUNSEL. Under each categopy other related arguments will be discussed.

== PAGE 3 ==

**i) TRIAL COUNSEL, MARK WERKSMAN WAS INEFFECTIVE :**

The crux of the Government's response is that the Trial Counsel cannot be held ineffective because he made a "strategic decision" which defendant agreed with. It could not be far from the truth.

When the issue of the mistrial came in play, the Defendant stated clearly that he wants to move for a mistrial. Attorney WERKSMAN lied in his deposition, stating that the defendant had not told him to move for mistrial. Clearly, that will be a classic case of defendant's word against the attorney's. However the same cannot be said here, and that's the reason **the Petitioner should be affiorded a evidentiary hearing**: The Translator that was present during the trial, and had translated the discussion on the mistrial subject, can testify to the fact that the defendant **"vehemently"** protested in favor of moving for mistrial, with good reason. Contrary to what the Government asserts, the fact that the jury heard portions of the defenadnt's proffer statements, **compelled** him to take the stand in order to clarify those statements, because in the form they were presented by the prosecutor, was misleading and depicted a different picture than the reality. The Defendant stated clearly that he doesn't want to take the stand in the beggining of the trial because he was afraid that the prosecutor in cross-examination will trick him into saying things that can be misinterpreted. However after the introduction of the portions of the proffer statements, the defendant had to take the stand.

Contrary to the Government's reminder that in event of a granted mistrial motion would not have resulted in an aquittal, but in a new trial, the defendant states that along with a new trial would have come with a,,,,"**new jury pool**" that would not have been tainted by hearing the defendants' portions of proffer statements, and also would not have to take the stand (which clearly hurt him). With all those different facts, the trial outcome would have been different. To prove the outcome would have been different as a fact, only God can do that, and we all can speculate.

The tactical decisions that the Governemnt relies so heavily, are not fully immune from review. A decision so important during the trial phase that can potentially affect the outcome of the criminal proceedings against him, the potential to effect his life or fate, should be **his only** to make. In **Farreta v. California, 422 US 806(1975)** Justice Blackmus stated in the Dissent :

> "It is undeniable that in the most criminal prosectuons defendant could be better defend with counsel's guidance....To force a lawyer's [decision]... on a defendant can only lead him to believe that the law contries against him. The right to defend is **personal.** The defendant, **and not his lawyer or the State,** will bear the personal consequences of a conviction. Therefore it is the defendant..who must personally decide...although he may conduct his own defense to his detriment, his choice **must be honored....**"

<u>Farreta</u> established clearly that the right to counsel is more than a right to have one's case presented. It is predicated upon the defendant assisting his attorney by making choices that are **his to make,** choices that can cost him his life or freedom.

Therefore if an Evidentiary Hearing is afforded, and the Armenian Language Translator is called to testify under oath, the Petitioner can prove that he clearly directed his attorney to file for a mistrial.

The Petitioner is well aware that one issue alone may not rise to the level of a defective representation in violation of the Sixth Amendment to the U.S. Constitution. That's why the Petitioner cited other errors, that together can have a cumulative effect that indeed can rise to the level of an Ineffective Assistance of Counsel. One such error was the Trial Counsel's performance in Impeaching the Witnesses.

---

The Government in their response @ Page 9 argue that failure to impeach two witnesses out of a total of 20 witnesses should not be cataloged as un-competent. First, the Governemnt concedes the argument that the two witnesses were impeachable (and they weren't). Second they don't offer no specific portion of testimony from the other 18 witnesses that the jurors would have relied on finding a verdict of guilt. Accordingly the Petitioner consider this argument being conceded, however in order to be clear, the Petitioner will offer several examples of testimonies from those other 18 witnesses, to show that their said testimony was not crucial in offering evidence/proof of guilt, but they were what the legal jargon call "fundation witness" that builds the legal basis for other witnesses to testify, namely to satisfy the req of RULE 401 and 402 of Fed.Rul.Evidence. Even if the fundation testimony was valid, without the "bridge" testimony between the star witnesses and those will not be enough to find guilt.

WITNESS HEIDI WINKLER :

This witness testified that she is not familiar with the defendant and that never witnessed any check cashing transaction. She went on to describe another Armenian male named Vardan, and other totally hearsay statements that didn't implicated the defendant directly in any crime.

WITNESS RAHEESY-NEZHAD, M.D. ("AMIR")

This witness testified about his office manager dealings, but had indicated that he had no knowledge if any cash was received back by his manager. He also stated that ha has **no personal knowledge** of the Defendant.

WITNESS TIGRAN HAKHVERDIAN

This witness is a former employee of the Defendant's business in A&K TRADING, in postion of graphic designer. He testified that he had prepared hundreds of designs for businesses. His testimony only showed that the Defendant runned a legitimate business. Tigran now is unemployed.

WITNESS CHRISTOPHER THOMPSON

This Witness was an investigator for the Nevada Attorney General's Office Medicaid fraud unit. His testimony was about some medical businesses, including one INTYMAK, but withou providing any clue as to what connection, if any, that business has to the defendant or the trial itself.

WITNESS JAMES HAMPTON

This witness was a construction manager from Sunrise Arizona. In ~~his testimony describe some abandoned property, with no apparent or~~ relevancy to the case or the defendant.

The examples could go on and on. As said at the beggining of this chapter the rest of the 18 witnesses couldn't provide a direct evidence of a crime. The only witnesses who did that, were the two witnesses that the Government conceded that had inconsistencies in their story, and that the Trial Counsel didn't impeach them at all, fact that can be perceived as ineffective assistance when coupled with other mistakes as failure to ask for a mistrial, or to call an expert witness, namely a forensic accountant, which will be described below.

## FAILURE TO CALL EXPERT WITNESS /FORENSIC ACCOUNTANT

One of the issues that the Defendant raised in his §2255 was that his TRIAL COUNSEL failed to call an expert witness at trial, namely

an forensic accountant, despite the fact that the Petitioner paid MR. WERKSMAN $10,000 to secure the services of an CPA. Actually it was Attorney's WERKSMAN's ideea as evidenced by his request for funds to hire one (see Exhibit 4 of §2255 Motion).

The Governemnt's case-in-chief laid out a case for the jury that want to make them believe that the defendant received around $4 mil "illegal" payments that were returned as "cash-back" at a rate of 91-93%, therefore retaining an "illegal" commission of 7-9%. If we see the analysis made by the defendant in his §2255 @P.63, it cost the defendant 3,5 millions to set up a "front business" in order to cash in $320.000, which is absurd. NOBODY SPENDS 3.5 millions dollars to gain $320,000!. If an forensic accountant would have been retained by Attorney Werksman, he would have performed an expert audit of the defendant's spending in maintaining his "front" businesses, so he could have taken the stand and testify that the true cost of running the defendant's businesss were **ten times more than what the Government alleges he profited from the "scheme"**. Such testimony would have had an tremendous impact on jurors minds, regarding the Governemnt's case theory.

Let's not forget that the Petitioner didn't have to prove that he is completly innocent, but to "punch enough holes" in Governement's case, to show proof that the jury will have reasonable doubt as to the guilt, which would translate in an aquital. An aquittal is NOT a proof of innocence, just that the Governemnt didn't meet their burden of proof.

== PAGE 9 ==

The Governemnt hilariously tries to make the Court think that he is alleging ineffectiveness assistance of counsel based on failure to secure an forensic accountant to....prove the amount of losses at sentencing! No, it is the Defendant position that the TRIAL COUNSEL was ineffective for not calling an expert witness during the trail, namely an forensic accountant to show the fallacy of the Governemnt case, and introduce enough reasonable doubt in jurors mind that could have had an effect of aquitall.

**On the other hand,** the same testimony and findings of an forensic accountant (if we had secured the services of one) could have been used at sentencing by the SENTENCING COUNSEL in arguing the AMOUNT OF LOSS! Apparently the Government choosed to address only one side of petitioner's argument, knowing that it is not the whole argument.

Accordingly, TRIAL COUNSEL can be found to be ineffective based on cumulated errors that deprived the Petitioner of a fair representation.

ii) SENTENCING COUNSEL, THOMAS NISHI WAS INEFFECTIVE :

Due to the constant conflict with his trial counsel, a new one was appointed to represent the petitioner through sentencing. The major crux of Petitioner's compalint regarding the representation of this counsel, Thomas Nishi, is that at sentencing he failed to argue the sentences one the two counts to run concurrent instead of the

consecutive, as was the way it was calculated eventually. The Court imposed a 96 months imprisonment, by imposing a maximum of 60 months for the Conspiracy, and 36 months on the False Statements, and then order them to run consecutive.

The hilarious explanation offered by the Governemnt's counsel, is even more funny than the sentencing counsel's own utterly ridicolous explanation, namely that he didn't raise the argument because of the "Petitioner's lack of any type of remorse, and....due the loss amount".

It is unbelievable that an attorney would refuse to argue a non-frivolous argument, due to his personal believes as to the remorse, or lack of it, or gravitty of the crime. That explanation that is given by Counsel Nishi, in his statement under oath, steps on all America Bar Association Rules of Conduct and Standards. Regardless of the total sentence that the Guidelines dictates, the way it was calcualted is wrong, violates the Guidelines and the Petitioners rights, as it will be explained below.

1) U.S.S.G. §1B1.1.APPLICATION INSTRUCTIONS:

The USSG §1B1.1 set forth the procedure as to how a court should calculate a sentence when a defendant is accused and convicted of a crime that involves more than 1 count. There are specific steps to be employed, and failure to follow it, is reversible error, see e.g. U.S. v. Wernick, 691 F.3d 108 (2nd Cir.2012).

§1B1.1  **APPLICATION INSTRUCTIONS:**

(a) The court shall determine the kinds of sentence and the guideline range set forth in the guidelines, see 18 U.S.C. §3553(a)(4) by applying the provisions of this manual **in the following order,...**:

    (1) Determine, pursuant to §1B1.2(applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction....

    (2) Determine the base offense level and apply any appropiate specific offense characteristics, acros referencess, and special instructions contained in the particular guideline in Chapter Two in the order listed.

    (3) Apply the adjustments as appropiate related to vicyim,role, and obstruction of justice from Parts A,B, and C of Chapter Three.

    (4) **If there are multiple counts of convictions, repeat steps(1) through (3) for each count. Apply Part D of Chapter Three to gropu various counts and adjust the level accordingly.**

    (5)..................................................................

    (6)..................................................................

    (7)..................................................................

    (8)..................................................................

According to the §1B1.1 provision cited above, the Court should have calculated the sentencing guideline range **for each count separate,** which could have been 96 months or more (assuming arguendo that all the enhancement were proper).

After the Sentencing Guideline was determined for **both** counts, according to U.S.S.G.§1B1.1(a)(4), the Court should have "apply the PART D OF CHAPTER THREE to group various counts. Chapter Three,Part D direct the Court to do the following :

§3D1.1     Procedure for Determining Offense Level on Multiple Counts

   (a) When a defendant has been convicted of more than one count, the Court **shall** :
   
   (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts("Groups") by applying the rules specified in §3D1.2.
   (2) Determine the offense level applicable to each Group by applying the rules specified in §3D1.3.
   (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in §3D1.4.

Accordingly pusruant to above mentioned procedure, the Court should have grouped the two Counts in one Group, as directed by the following U.S.S.G. §3D1.2 :


§3D1.2   Groups of Closely Related Counts :

All counts involving substantially **the same harm shall be grouped together into a single Group.** Counts involve substantially the same harm within the meaning of this rule:

(a).............................................................................
(b) When counts involve the same [victim] and two or more acts or the transactions are connected by a common criminal objective or are constituting part of common scheme or plan.
(c).............................................................................
(d).............................................................................

The two Counts for which the Petitioner was convicted, satisfies the criteria set forth in §3D1.2(b), because One Count charges a Conspiracy to Defraud the United States, and Count charges lying to

the agents of the U.S. about the same when questioned about it. The counts are to be **grouped together** [under the subsection (b)] when they represent essentially a single injury or are part of a single episode or transaction involving the same victim, see e.g. **Application Note 3 of U.S.S.G. §3D1.2.**

More clarity to support the Petitioner position, is the **Application Note 4, U.S.S.G. §3D1.2**, namely :

> "Counts that are part of a single **course of conduct** with a single criminal objective are represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occuring at different times".

Therefore the Court should have grouped the two counts together in a single group. After the grouping, the offense with the highest guideline should be imposed. However, in this case there is a statutory constrain, because of the 60 months maximum sentence, which prevails over the Sentencing Guideline calculatuion.

Accordingly, the sentencing counsel should have brought forth the above stated argument, arguing in support of a 60 months sentence, and to argue that is a eeror to impose a consecutive sentence in order to impose the sentnec guideline range that was calculated over 60 months. As it can bee seen from the above argument, it is not frivolous and the attorney not arguing it because of the Petitioner's "lack of remorse and the amount of loss" is Ineffective Assistance of Counsel.

iii) APPELLATE COUNSEL, MYRA MOSSMAN, WAS INEFFECTIVE:

Appelate counsel also was ineffective, for failure to argue the fact that the sentences on the two counts of conviction were imposed consecutively in error instead of concurrent, as the U.S.S.G. directs.

Instead, the appeallate attorney had argued **in general terms and the usual "unreasonable sentence"** argument, that is held under higher standard of review than the sentencing guideline calcualtion or it's application review. The appeallate court reviews the sentences for reasonableess under the standard of "abuse of discretion", see e.g. **Gall v. United States, 552 U.S. 38,51 (2007)**.

On the other hand, the Court of Appeals, reviews the district court's interpretation/application of the sentencing guidelines on a "de novo" standard, which is less than an "abuse of discretion", see e.g. **United States vs. Kilbride, 584 F.3d 1240,1261(9Th Cir.2009)**.

To be more precise, the appelate attorney employed a poor strategy, to argue a"unreasonable sentence" by attacking the individual enhancements like, role in the offense,sophisticated means, and others, see **Appelant Brief** @ P.59-63.

The main problem is that **knowingly,** the appellate attorney had submitted the appeal to be reviewed under a higher standard of review tan necessary to win the argument, when a lower standard can had.

== PAGE 15 ==

By doing just that, she had closed the door on the chance of winning the contested application of the sentencing enhancements, that brought the guideline range higher than 60 months in the first place, and forcing the Court to committ an grave error of imposing a consecutive sentence on the counts that should ahve been grouped in the first place.

Accordingly, this mistake, when coupled with the other miriad of grave mistakes that occured in this case from the prosecution, indictment conviction and sentence raised to the level of an unjust outcome that was achieved in part by the counsels ineffectiveness.

---

## 2. PROOF OF SERVICE :

I, PETROSIAN ANDRANIK, do hereby cerify under the penalty of perjury, Title 28 U.S.C. §1746, that I caused to be sent according to RULE 5 of Fed.Rul.Civ.Proc., a true and correct copy of this brief to the opposing counsel, namely to the U.S.ATTORNEY VICKY CHOU, that is located at 1200 United States Courthouse, 312 N.Spring Street, Los Angeles, CA 90012, today **JANUARY 04, 2013**, after I applied First-Class Postage, and deposited the same in the EDC MAILBOX for collection by the U.S. POSTAL SERVICE.

A proof of mailing has been issued by the Institution Legal Mail Clerk, and can be offered to the Court or the opposing party upon request.

## 3. CONCLUSION :

Therefore, for reasons and arguments set forth in the Petitioner's Brief and Reply, the Petitioner respectfully request that his sentence and conviction be vacated, and proceedings are started anew, or any other partial releif that the Court may deem jut, proper and in the interest of justice.

## 4. VERIFICATION :

I, ANDRANIK PETROSIAN, Petitioner, do hereby certify that all the statements made in this submission are true and correct to the best of my knowledge.

Date: JANUARY 04, 2013

Signature,

ANDRANIK PETROSIAN
PRO SE PETITIONER
REG #45050 - 112
c/o EDEN C.I.
P.O.BOX 605
EDEN, TX 76837